A. S. DAVENPORT *v.* C. B. HAUPT

(No. 7482)

*and*

D. J. TWOHIG *v.* C. B. HAUPT

(No. 7483)

Submitted April 19, 1933.   Decided May 2, 1933.

596

*Maxwell, Sayre & Bowers,* for plaintiff in error.
*File, Goldsmith & Scherer,* for defendants in error.

KENNA, JUDGE:

These actions in trespass on the case are heard together by agreement. They were separately tried in the circuit court of Raleigh County and are submitted upon separate printed records. There is but one brief on each side covering both cases. In the oral argument it was agreed that the printed record in the Davenport case should be used in both cases, reference being had in the Twohig case, in addition, to those parts of the Twohig record specifically referred to in the briefs. This agreement has been followed in deciding the cases.

A. S. Davenport sued C. B. Haupt in the circuit court of Raleigh County in trespass on the case for personal injuries received in an automobile accident in the city of Beckley on the 3rd day of December, 1931. On a jury verdict for plaintiff, the court entered judgment in the sum of $1130.00 on the 15th day of July, 1932. From that judgment, this writ of error is prosecuted.

The accident forming the basis of the action occurred in the intersection of Prince Street with Oakwood Avenue. At about eight o'clock in the morning, the plaintiff, accompanied by his wife, was driving a Pontiac coupe east on Prince Street. The defendant was driving what is described as a Ford station wagon south on Oakwood Avenue, accompanied by four young men. The station wagon had a driver's seat and two other seats across its width. Its curtains, with isinglass lights, were up. There were stop signs on Oakwood Avenue on both sides of the intersection, the sign to the south being practically in the line of Prince Street, and that to the north some

thirty or forty feet north of the line of Prince Street. The testimony is in agreement on the fact that the defendant stopped for the intersection, although there is dispute as to the exact point at which this stop was made.

The plaintiff, A. S. Davenport, testified in substance that on the 3rd day of December, 1931, at around eight o'clock, he and his wife left their home in Reservoir Road and proceeded down to Harper Road where they stopped. They proceeded along the Harper Road to Prince Street, and, traveling east on Prince Street, approached Oakwood Avenue, driving at the rate of 20 or 25 miles an hour, until within about twenty feet of the intersection of Oakwood Avenue with Prince Street, where he slowed down to some extent. He saw the truck, driven by the defendant, approaching Prince Street on Oakwood Avenue when both he and it were about 75 yards from the intersection. He paid particular attention to it. The truck was traveling at about the same speed that plaintiff was making. When plaintiff was within about 25 feet of the intersection, the truck was coming to a stop. He says that he was sounding his horn at this time. Plaintiff looked carefully to the right because there was a dwelling there that more or less obstructed the view, and upon seeing that all was clear at the right and that the defendant's truck had come to a stop on the left, he continued into the intersection. He testifies that in passing the truck, it suddenly started and that in an effort to pass it without being struck he pushed down the accelerator of his car to give it all possible speed and that after the front end of his car passed the front of the truck, the center of the truck's bumper struck his rear left wheel and threw him around. The left window of his car had been lowered slightly and the impact caused his head to strike the window, dazing him to some extent. He made an attempt to gain control of his car, did not succeed in doing so, saw that the car was going over the bank, tried to pull it to the right and does not remember any more. On this record, we are not concerned with the details nor extent of his injury.

Plaintiff's wife, Hazel Davenport, testified in substantial accord with the testimony of the plaintiff. Prince Street was on a slight down grade in the direction that plaintiff was

traveling. The plaintiff and his wife both place the point at which the defendant stopped his truck approximately at the north edge of the hard surface of Prince Street. Prince Street had twenty feet paved surface and Oakwood Avenue, fourteen feet. Both the plaintiff and his wife describe the movement of the truck in starting immediately before the time it struck their coupe by saying: "It just seemed as though it leaped at us."

In addition to corroborating the testimony of her husband, Hazel Davenport, describes what occurred after the impact and after her husband had been dazed by the result of it. The Pontiac coupe continued on, ran off the road to the left or north after traveling some 75 or 100 feet and struck the wing wall of a concrete culvert. In addition to this testimony, not supplied by the evidence of the husband, the wife testified that after the accident and after her husband had been placed in a laundry truck which came up, the defendant Haupt, who was in the truck with her and her husband, upon her saying to him that he had pulled up and stopped at the intersection and that anyone would have thought he intended to stay where he belonged, replied: "Oh, it was all my fault. I didn't see you. I can't see good out of that old truck anyway."

In this last statement, Mrs. Davenport is corroborated by the testimony of Dick Dower, a young man who was driving the laundry truck that took the plaintiff to the hospital. Dower, in addition, states that substantially the same statement was made by Haupt on the steps leading up to the hospital. Everett Wickline and J. A. Lilly were close by at the time of the accident, heard the impact, and saw plaintiff's car traveling along the road after the impact and before it struck the culvert. They say that it was not traveling at a rapid rate of speed and attempt to place the speed at around twenty to twenty-five miles an hour.

For the defendant, C. B. Haupt, himself, and the four young men traveling with him in the automobile, testify. Haupt testified that in traveling south on Oakwood Avenue and approaching Prince Street, he brought the truck to a stop at about the point when he reached the north shoulder of Prince Street. This would place the point of his stop ap-

proximately twelve feet north of the north paved side of Prince Street. Haupt testified that he passed the stop sign on the north of Prince Street because of the fact that at that point, had he stopped at the sign, a small shed or building would have obstructed his view westward along Prince Street. He looked to his right and there was nothing in view (this was the direction from which the plaintiff was approaching), then looked to his left and there was nothing there, no cars approaching either way. He says that then he started across the intersection and as he got almost to the center he noticed plaintiff's car coming at a fast rate of speed immediately to his right and almost in front of him. He says that he then stopped as quickly as he could and that the collision occurred at the instant that he stopped, the Davenport car almost, but not quite, passing him. He testified that Davenport was going at least 55 miles an hour and possibly more. He denies the statement as to his fault as attributed to him by Mrs. Davenport and the witness Dick Dower. Wayne Furrow, Albert Seldonridge, J. H. McGinnis, and E. W. Grafton all testified substantially the same as Haupt except that they put the speed of the car (Davenport's) at between 45 and 50 miles an hour. Miss Elizabeth Phipps testified that at the time of the accident she was walking eastward on Prince Street and had passed the intersection going east. This placed her in a position where her back was to the intersection. She turned instantly upon hearing the impact and the defendant's car had at that time stopped approximately in the center of the intersection. Plaintiff's car was still traveling and swerving toward the left. She watched it go off the left side of the road into the culvert. She says it was traveling quite fast; that she noticed no change in its speed from the time she first saw it until it stopped and heard no horn blown at the time of the collision.

E. J. Kelly, an employee of Reo-Motor Company, testified that he examined the Pontiac coupe after the accident; that on the left side the axle had been forced back under the rear end of the front spring; that the steering wheel was broken, steering shaft bent and the gear shift bent until it was up under the dash.

J. N. Taylor, a barber employed at the place where Daven-

port worked, testified that Wayne Furrow stated to him that the accident was Haupt's fault; that he drove up to the street and slowed down, but never came to a complete stop, and that "we were looking at a girl coming down on the left. The truck was still in high gear and jumped out in the road and hit Davenport's car", or words to that effect. J. W. Price testified substantially to the same thing. The plaintiff in error (defendant below) complains of certain instructions given below on behalf of the plaintiff and also of certain instruction which were offered by the defendant and refused by the court.

The trial court was right in refusing defendant's peremptory instruction.

Instruction No. 3 given on behalf of the plaintiff is complained of most vigorously. It is predicated upon the doctrine of last clear chance and is objected to. not because it erroneously states that doctrine, but because plaintiff in error contends that the doctrine has no application to the facts of this case. The question thus raised presents some difficulty. Between those cases in which the doctrine is clearly applicable and those cases in which it is clearly inapplicable, there is a doubtful zone. However, a properly drafted instruction stating the doctrine, as here, necessarily leaves it to the jury to determine whether the circumstances under which it can be properly invoked are established by the evidence. Here, we cannot say that the facts proven justified the application of the doctrine. Neither can we say that the facts proven did not justify its application. They did justify invoking it. Perhaps, the jury applied it and perhaps the jury did not apply it, according to the facts that the jury conceived to be established by the evidence. Perhaps the defendant could have tested whether the jury, in arriving at its verdict, was applying the doctrine of last clear chance by the simple expedient of a special interrogatory. Certainly, there is proof tending to show that the doctrine might be applied. Defendant's witness McGinnis testified that the first thing that called his attention to the Davenport car was an exclamation by Grafton, one of the young men riding with them in the station wagon, to "look out Mr. Haupt". McGinnis then looked up and saw the Davenport car some ten feet away. It would

seem that this testimony would furnish ground for several reasonable inferences. First, that Grafton saw the Davenport car an appreciable time before McGinnis, whose attention was attracted by Grafton's exclamation, had the opportunity to see it. It could be assumed that Haupt himself had at least as great an opportunity as had Grafton to note the approach of the Davenport car. If he had done so, and if thereafter he had reasonable opportunity to avoid the accident and failed (he testified that he could have stopped within two or three feet), a jury might well have applied the doctrine of last clear chance. In other words, not only are the facts essential to fix responsibility under the doctrine and embraced within it, a question for jury determination, but in some instances, as here, the existence of facts which might or might not justify invoking the doctrine at all, is also for the jury. An instruction properly phrased that presents to a jury the question of whether the doctrine should be invoked in the first instance, and also the question of fixing the responsibility under the doctrine, if applied, in the second instance, is not reversible error if, on any theory of the evidence, the doctrine could be applied. In our opinion, this record presents such a case, and we therefore do not think that the giving of plaintiff's instruction No. 3 was reversible error.

The refusal of the trial court to give defendant's instruction No. 5 is complained of. We are of opinion that the substance of this instruction was adequately covered by the giving of the defendant's instruction No. 4, and further that, because defendant's instruction No. 5, which was refused, assumed that plaintiff's car was approaching "in the distance" it is objectionable and was properly refused.

Instructions Nos. 8 and 9 were refused, and, in his brief, plaintiff in error argues that this was prejudicial to him. He does not assign error for this reason. Both of these instructions are predicated upon the provisions of section 18, article 8, chapter 17 of the Code, as amended by chapter 59 of the Acts of 1931. The salient point is the speed of the vehicle and the question whether, under all the circumstances, its driving was reasonable and prudent. While it might well be that these instructions were proper to be given, we are of opinion, nevertheless, that their subject matter was in effect

covered by instruction No. 11 given at the request of the defendant below. Instruction No. 11 tells the jury that an ordinance of the city of Beckley makes it unlawful for any person driving an automobile within the corporate limits of that city to exceed a speed of eight miles an hour when approaching a street intersection. The instruction directs the jury to return a verdict for the defendant in the event they find that the plaintiff was approaching the intersection at a greater speed than eight miles per hour and that such violation of the ordinance contributed "in an efficient degree to the accident testified about in this case". The limitations placed upon plaintiff by instruction No. 11, under all of the facts of this case, are certainly more severe than those sought to be placed upon him by defendant's instructions Nos. 8 and 9. We therefore conclude that the refusal to give instructions Nos. 8 and 9 could not have been prejudicial to the defendant.

Instruction No. 10, offered by the defendant and refused, is predicated upon the failure of plaintiff to blow his horn "when approaching points on the highways where the view of an intersecting highway is obstructed". All of the testimony is to the effect that defendant drew up at the intersection of Oakwood Avenue and Prince Street and stopped at a point in the intersection where the truck he was driving was in perfectly plain view from all points on Prince Street. It therefore was not, in our opinion, error for the trial court to refuse an instruction which assumes that the plaintiff's view of the intersection was obstructed. His view of the sides of the highway, in so far as seeing the vehicle being driven by the defendant is concerned, was not obstructed.

Instruction No. 13, offered by the defendant and refused, is adequately covered by other instructions.

Instruction No. 15, offered by the defendant and refused, in its last paragraph, instructs the jury that if after weighing the evidence they believe the damages of which plaintiff complains were the result of concurrent negligence of both the plaintiff and the defendant, it is their duty to find for the defendant. It will be noted that this instruction is merely an abstract statement. The jury, in other instructions, had been sufficiently informed concerning the law of contributory negligence. While there may be an academic distinction between

contributory negligence and what is termed concurrent negligence in that the one might be said to mean the negligence of plaintiff which in point of time follows that of the defendant, and the other may be said to mean simultaneous negligence of plaintiff and defendant, we are of opinion that for the practical purpose of enlightening the jury in this case, adequate instructions on contributory negligence are sufficient, at least to prevent a refusal to instruct on concurrent negligence from being prejudicial and reversible error. It might be asked also whether, if the negligence of the plaintiff and defendant was exactly simultaneous, plaintiff's superior rights at this intersection, which cannot be denied on any theory of the case, might not even then give him the right to recover. The rights of the parties were not equal, and it might therefore well be urged that defendant was not entitled to an instruction on concurrent negligence.

The failure of the court below to give defendant's instruction No. 3 is alleged as error. At best, this instruction is ambiguously worded. In effect, it would have told the jury that even though they believed from the evidence that a statement alleged to have been made by the defendant that the accident was his "fault" was proven, that that fact would not permit the plaintiff to recover, unless the evidence in the case before the jury, including such statement, showed negligence of defendant which was the direct and proximate cause of plaintiff's injury. This instruction is objected to upon the theory that the admission of fault on the part of the defendant, might refer to moral fault and fall short of the requirement for legal recovery. Of course, this is true, but, on the other hand, the instruction tells the jury that no matter what kind of fault they believe the defendant had in mind in making the statement, a recovery cannot be based upon the statement alone. This is not so. If, perchance, the defendant intended, and the jury believed that he intended, by the word "fault" to embrace all the elements of legal blame sufficient to constitute a cause of action in the plaintiff, then, clearly, the plaintiff could recover on that alone. The instruction totally ignores this possibility. Hence, the court below was justified in refusing to give it. Furthermore, the statement attributed to the defendant was not alone an admission of fault. In it

he is alleged to have stated that he did not see the plaintiff's car, and, further, that he could not see well out of the truck. These additional factors in the statement are totally ignored by the instruction. It was therefore erroneous and calculated to mislead.

For the reasons stated, the judgments of the circuit court of Raleigh County in the case of A. S. Davenport v. C. B. Haupt (No. 7482 here) and in the case of D. J. Twohig v. C. B. Haupt (No. 7483 here) are affirmed. This opinion is applicable to both cases based upon the record in the case of Davenport v. Haupt in the decision of the Davenport case, and upon the record of Davenport v. Haupt in the Twohig case supplemented by referring to the record in Twohig v. Haupt where specific references were made by the briefs to that record.

*Affirmed.*